IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02192-REB-CBS

MARJORIE A. KESSLING, and
TRENTON H. PARKER,
        Plaintiffs,

v.

BRUCE T. BARKER, individually and in his official capacity,
STEPHANIE ARRIES, individually and in her official capacity,
BETHANY SALZMAN, individually and in her official capacity,
GARY SCHWARTZ, individually and in his official capacity,
NICK MEAGHER, individually,
JOHN COOK, individually and in his official capacity, and
THE WELD COUNTY COMMISSIONERS, individually and in their official capacities,
        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on the "Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 14) Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1)" filed by Defendants Barker, Arries, Salzman, Schwartz, Cook, and "the Weld County Commissioners" on December 30, 2011 (Doc. # 16).  Pursuant to the Order of Reference dated August 24, 2011 (Doc. # 2) and the memorandum dated December 30, 2011 (Doc. # 17), this matter was referred to the Magistrate Judge.  The court has reviewed the Motion, "Plaintiffs' Answer to Defendants' Motion to Dismiss Amended Complaint – Conspiracy & Trespass" ("Response") (filed February 21, 2012) (Doc. # 23), Defendants' Reply (filed March 6, 2012) (Doc. # 24), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

1

I.      Statement of the Case

Proceeding *pro se*, Plaintiffs filed their original Complaint on August 22, 2011.  (*See*

Doc. # 1).  They filed their Amended Complaint on December 9, 2011.  (*See* Doc. # 14).  The

Amended Complaint is entitled "Amended Civil Rights Complaint for Violations of Plaintiffs'

Fourth and Fourteenth Amendment Rights."  (*See id.*).  Plaintiffs bring their claims pursuant

to 42 U.S.C. § 1983 and supplemental jurisdiction.  (*See* Doc. # 14 at 2 of 6).  Plaintiffs allege

that they

> are seeking relief for damages against Defendants Barker, Arries, Salzman,
> Schwartz, Maegher, and Cook for conspiring together to conducting an
> unauthorized and illegal search and seizure of and on the Defendants ranch
> property (Agricultural land pursuant to C.R.S. 39-1-102(1.6), located at Weld
> County Road 8 and 35 in Weld County Colorado.  Defendants Barker, Arries,
> Salzman unlawful acts took place on September 29, 2009, in violation of the
> Plaintiffs IV and XIV Amendment rights and in violation of Colorado's
> Constitution, Article II, Bill of Rights, Section 7 (Search/Seizure); and Colorado's
> Criminal Code – C.R.S. – 18-4-415 (Use of photographs, video tapes or film)
> and C.R.S. – 18-4-502 (First Degree Criminal Trespass), and C.R.S. 18-4-503
> (Second Degree Criminal Trespass).  Plaintiffs further allege that on or about
> September 5, 2009, Defendant Cook, along with his deputies, conducted an
> unlawful video filming of the Defendants personal and private property in
> violation of The Defendants IV Amendment rights and in violation of C.R.S. 18-
> 4-415 when Defendant Cook sent a deputy to video tape the offices and
> equipment in the back area of the ranch without permission or lawful authority
> to do so.  [Sic].

(*See* Doc. # 14 at 2 of 7).  Plaintiffs also seek "declaratory and other injunctive relief."  (*See*

*id.* at 5 of 6).

Plaintiffs sue all of the Defendants in both their individual and official capacities.  (*See*

*id.* at 1 of 6).  Plaintiffs sue Defendant Barker in his capacity as the Weld County, Colorado

County Attorney, Defendant Arries in her capacity as an Assistant Weld County Attorney,

Defendant Salzman in her capacity as an employee of the Weld County Building and Zoning

Department, Defendant Schwartz in his capacity as a supervisor with the Weld County

2

Animal Control unit, Defendant Maegher in his capacity as a private citizen, Defendant Cook in his capacity as the Sheriff of Weld County, and "The Weld County Commissioners" in their capacity as "the administrative heads of Weld County and the employers and supervisors of Defendants Barker, Arries and Salzman."  (*See id.*).

II.      Standard of Review

Defendants move to dismiss the AC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  Defendants' argument that certain of Plaintiffs' claims fail to state a claim within one of the waivers of immunity contained within the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24–10–106, constitutes a challenge to subject matter jurisdiction.  *See Douglas v. City and County of Denver*, 203 P.3d 615, 617 (Colo. App. 2008) ("Whether a claim is barred on grounds of immunity under the CGIA is a question of subject matter jurisdiction and is properly addressed under C.R.C.P. 12(b)(1).").

Fed. R. Civ. P. Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or

3

she is entitled to relief.  *Twombly*, 550 U.S. at 556.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id*.  "Rule 8(a)'s mandate, that plaintiffs 'provide a short and plain statement of the claim showing that the pleader is entitled to relief,' has been incorporated into . . . the . . . 12(b)(6) inquir[y]."  *U.S. ex rel Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).  The "requirement of plausibility serves . . . to inform the defendants of the actual grounds of the claim against them."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

Because Plaintiffs appear *pro se*, the court reviews their "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").   However, a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's advocate);  *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint");  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.    Analysis

Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983 and supplemental jurisdiction. (*See* Doc. # 14 at 2 of 6, ¶ 8).  Section 1983 provides a civil cause of action for individuals

who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970).  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  "In order to successfully state a cause of action under section 1983, [Plaintiffs] must allege . . . the deprivation of a federal right and that the alleged action was taken under color of state law." *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) (internal quotation marks and citation omitted).

A.      Defendant Maegher

Fed. R. Civ. P. 4(m) provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action:

> "[i]f a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Defendant Maegher was named in this case upon its initial filing on August 22, 2011.  As of this date, more than eleven months has passed since the filing of the case and the record before the court indicates that Defendant Maegher has not been served with a summons or complaint in this action.  To date, Defendant Maegher has not filed with the Clerk of the Court a signed waiver of service or appeared in the case.  Plaintiffs have not requested or shown good cause for an extension of time to serve Defendant Maegher.

5

A court cannot obtain personal jurisdiction over a party without proper service of process. *See Murphy Brothers, Inc v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (citation omitted); *Oklahoma Radio Associates v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) ("Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served") (citations omitted); *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case."). Sufficient time has been afforded to serve Defendant Maegher such that he may properly be dismissed for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

B.      Conspiracy Claim

Plaintiffs allege that Defendants conspired to violate their constitutional rights. (*See* Doc. # 14 at 2 of 6, ¶ 10 ("for conspiring together"), ¶ 11 ("by their concerted actions"); Doc. # 23 at 1 of 14 ("The case at bar is a simple civil rights action, involving a criminal conspiracy among Defendants, to commit specific acts of criminal trespass, . . .), 4 of 14 (Defendants Barker, Arries, Salzman, Schwartz, Maegher and Cook, by their deeds and actions 'conspired' by entering into a mutual agreement to commit a series of crimes and civil rights (tort) violations, . . .")). "By a § 1983 conspiracy claim," the Tenth Circuit "mean[s] a conspiracy to violate a right protected by § 1983; in other words, a conspiracy to deprive a

plaintiff of a constitutional or federally protected right under color of state law." *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990) (citations omitted).

Plaintiffs allege that Defendants Barker, Arries, Salzman, Schwartz, Maegher, and Cook conspired "together to conduct[ ] an unauthorized and illegal search and seizure of and on the defendants['] ranch property. . . ." (*See* Doc. # 14 at 2 of 6, ¶ 10). Plaintiffs have not alleged an understanding, an agreement, or concerted action necessary to establish the Defendants' participation in a conspiracy. Plaintiffs do not particularize the date or time of any alleged conspiracy, the objective of the conspiracy, or the Defendants' specific conduct in the conspiracy. The Amended Complaint contains nothing more than a conclusory allegation as to the existence of a conspiracy. "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). *See also Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (for § 1983 conspiracy claim, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants) (citation omitted); *Crabtree By and Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) ("[T]he rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."); *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) ("[C]onclusory allegations that defendants acted 'in concert,' or 'conspired' without specific factual allegations to support such assertions are insufficient.") (quoting *Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo. 1998)). Plaintiffs' allegations are insufficient to state a claim that Defendants conspired to violate their constitutional rights. As Plaintiffs fail to allege any specific facts to support a conspiracy among the Defendants, their conspiracy claim is properly dismissed for failure to state a claim upon which relief can be

7

granted. *See Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (upholding dismissal of an amended complaint that failed to provide factual averments as to the nature of the alleged conspiracy or the defendant's role in the alleged activities); *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice.").


C.     Negligence

To the extent that Plaintiffs allege under § 1983 that any of the Defendants acted negligently (*see* Doc. # 14 at 4 of 6, ¶ 22), they do not state a claim upon which relief can be granted. Claims of § 1983 liability may not be predicated on negligence. *Daniels v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662 (1986). *See also Medina v. City and County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) ("negligence and gross negligence do not give rise to section 1983 liability"), *overruled in part on other grounds*, *Williams v. City & County of Denver*, 99 F.3d 1009, 1014-15 (10th Cir. 1996); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (negligent deprivations of property do not violate the Due Process Clause).


D.     Violations of State Law

To the extent that Plaintiffs allege that Defendants violated the Colorado Constitution and state criminal laws (*see* Doc. # 14 at 2, 4 of 6, ¶¶ 10, 18-20; Doc. # 23 at 1-6, 9 of 14, ¶¶ 1, 4, 22, 23, 43), they do not state a claim upon which relief can be granted. First, "section 1983 does not provide a cause of action to enforce the Colorado Constitution. . . ." *Rueb v. Zavaras*, No. 09-cv-02817-REB-MEH, 2011 WL 839320, at ** 4-5 (D. Colo. Mar. 7, 2011).

Plaintiffs have "no implied right of action to bring such state constitutional claims, and they, therefore, must be dismissed without prejudice for lack of subject matter jurisdiction." *Id.* Second, criminal statutes do not provide a private right of action and are not enforceable by individuals through a civil action. *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). *See also Winslow v. Romer*, 759 F. Supp. 670, 673 (D. Colo. 1991) ("Criminal statutes cannot be enforced by civil actions").  As Plaintiffs are barred from bringing claims pursuant to the cited Colorado criminal statutes, any claim with respect to the alleged violation of these statutes is properly dismissed for failing to state a claim upon which relief may be granted. *See Wolf v. Petrock*, 382 F. App'x 674, 677 (10th Cir. 2010) (affirming the dismissal of a civil claim pursuant to Fed. R. Civ. P. 12(b)(6) because the plaintiff attempted to bring the action under criminal statutes).

To the extent that Plaintiffs' claims can be interpreted as raising state law civil claims against government entities and/or employees, the CGIA, Colo. Rev. Stat. §§ 24-10-101 *et seq.*, bars any claim against a public entity or a public employee for injuries that lie in tort or could lie in tort, except in certain limited circumstances.  *See* Colo. Rev. Stat. § 24-10-105, § 24-10-106(1) ("A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section").  Claim of trespass, negligence, and conspiracy under Colorado law lie in tort and are subject to the provisions of the CGIA.  *See Sanderson v. Health Mesa Homeowners Ass'n*, 183 P.3d 679, 682 (Colo. App. 2003) (setting forth elements of the tort of trespass);  *Arabasz v. Schwartzberg*, 943 P.2d 463, 465 (Colo. App. 1996) ("In resolving whether a claim is barred by the CGIA, the question is not how the claim is characterized, but whether the claim is a tort claim or could

9

be a tort claim."); *State v. Zahourek*, 935 P.2d 74, 78 (Colo. App. 1996) ("counterclaims based on alleged conspiracy . . . would lie in tort and therefore be barred" by the CGIA). The enumerated exceptions to the CGIA do not include the torts of trespass, negligence, or conspiracy and, therefore, immunity has not been waived as to any state law trespass or negligence claims. As Plaintiffs' claims for trespass or negligence in violation of state civil law fail to state a claim within one of the waivers of immunity contained within the CGIA, they are properly dismissed for lack of subject matter jurisdiction.

E.      Fourteenth Amendment

        To the extent that Plaintiffs allege a claim under the Fourteenth Amendment, this clause does not provide them with a remedy for their claims arising out of the alleged illegal search and seizure of their property. Claims involving searches and seizures are governed by the Fourth Amendment, which secures the right against unreasonable seizures, and not the Fourteenth Amendment. The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.[1] "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of

_____

        [1]      The protections of the Fourth Amendment are made applicable to the states through the Fourteenth Amendment. U.S. Const. amend. XIV; *Michigan v. Summers*, 452 U.S. 692, 694 n. 2 (1981); *Pierce v. Ohio Dept. of Rehabilitation and Corrections*, 284 F. Supp. 2d 811, 828 n. 16 (N.D. Ohio 2003).

substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*,

510 U.S. 266, 273 (1994) (internal quotation marks and citation omitted).  The deprivations

which Plaintiffs allege arise out of the search and seizure of their property are protected

under the Fourth Amendment and are thus properly analyzed under the reasonableness

standard of the Fourth Amendment, rather than the Fourteenth Amendment.  *See, e.g.,*

*Becker v. Kroll*, 494 F.3d 904, 918 (10th Cir. 2007) ("[N]o  § 1983 claim will arise from filing

criminal charges without probable cause under the substantive due process protections of the

Fourteenth Amendment.") (citing *Albright v. Oliver*, 510 U.S. 266 (1994));  *Arbuckle v. City of*

*Chattanooga*, 696 F. Supp. 2d 907, 921 (E.D.Tenn. 2010) ("Where a plaintiff's claims under

the Fourteenth Amendment arise out of a common nucleus of facts and pertain to an alleged

wrongful search or seizure, it is appropriate to analyze such claims under the reasonableness

standard of the Fourth Amendment instead of an analysis of substantive due process rights.")

(citations omitted).  Plaintiffs do not allege any facts to support a claim for violation of due

process under the Fourteenth Amendment.  To the extent that Plaintiffs allege violation of

their Fourteenth Amendment rights based on the search and seizure of their property, their

claim is properly dismissed for failure to state a claim upon which relief can be granted.[2]


F.      Prosecutorial Immunity

        Plaintiffs' allegations clearly indicate that they are suing Defendants Barker and Arries

for conduct related to their professional duties as attorneys for Weld County during the

_____

        [2]      While Plaintiffs base their conspiracy claim on "an unauthorized and illegal
search and seizure of and on the defendants['] ranch property, the court does not perceive
that Plaintiffs allege a Fourth Amendment violation independent of their conspiracy claim.  In
an abundance of caution, if the court has misperceived Plaintiffs' claims, the court
recommends dismissal without prejudice.

course of an investigation regarding compliance with zoning laws.  (*See* Doc. # 14; Doc. # 1 at 6 of 6).  All of the allegations against Defendants Barker and Arries implicate Defendants' exercise of professional judgment in the performance of prosecutorial duties and therefore fall within absolute immunity.  "Prosecutors are entitled to absolute immunity for . . . their investigatory or evidence-gathering actions, . . . ."  *Nielander v. Board of County Com'rs.*, 582 F.3d 1155, 1164 (10th Cir. 2009) (citation omitted).  *See also Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir. 1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)).  "It is well established that prosecutors are absolutely immune from suit under section 1983 concerning activities 'intimately associated with the judicial . . . process,' such as initiating and pursuing criminal prosecutions."  *Id.*  Prosecuting attorneys are absolutely immune from suit under § 1983 for decisions to prosecute, *Hammond v. Bales*, 843 F.2d 1320, 1321 (10th Cir. 1988); to not prosecute, *Dohaish v. Tooley*, 670 F.2d 934, 938 (10th Cir. 1982); and for any related investigatory or evidence gathering functions undertaken in connection with the prosecutorial function.  *See Imbler*, 424 U.S. at 431 n. 33 (decisions entitled to immunity include "whether and when to prosecute[ ][and] whether to dismiss" a case); *Scott v. Hern*, 216 F.3d at 909 (prosecutor's immune conduct includes investigation, or lack thereof).  Plaintiffs fail to state a claim for relief against Defendants Barker and Arries.

G.     No Supervisory Liability

Plaintiffs allege liability of "The Weld County Commissioners" through a theory of *respondeat superior*, in that they "are responsible for the supervision of Barker and Arries and Salzman and the Weld County Planning Department and the employees thereunder, and their failure to supervise the criminal behavior of Salzman, Barker and Arries makes them

12

liable for their conduct both jointly and individually." (*See* Doc. # 14 at 4 of 6 , ¶ 21).  Plaintiffs allege liability of Defendant Cook based on his supervision of his deputies.  (*See* Doc. # 14 at 2 of 9, ¶ 10; Doc. # 43 at 5 of 14, ¶ 22).  (*See also* Doc. # 23 at 10 of 14, ¶ 45 ("the Plaintiffs have clearly alleged in paragraph 21 of their [Amended] Complaint, that Defendants Cook and the Commissioners failed to properly supervise those under their command and control and are liable under the doctrine of 'Respondeat Superior.'")).

First, as the court has determined in this Recommendation that Plaintiffs fail to allege the requisite predicate of showing an underlying constitutional violation, they fail to state a claim for relief against a public entity employer.  *See Estate of Larsen ex. Rel Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008) ("without the predicate constitutional harm inflicted by an officer, no municipal liability exists") (citation omitted);  *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (same) (citation omitted).

Second, to the extent that Plaintiffs are suing Defendants in their official capacities, they are actually attempting to impose liability on their employers.  *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents").  Plaintiffs' claim against "The Weld County Commissioners" fails because § 1983 does not encompass *respondeat superior* liability on the part of a municipality or local government.  Municipalities and other local government entities such as counties are "persons" under § 1983, and can therefore be sued for their constitutional torts.  *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978).  In *Ashcroft v. Iqbal*, the Supreme Court reiterated the long-standing rule from *Monell* that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." 556 U.S. 662, 676 (2009).  The Court

13

explained that in "a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677.

Municipalities may be held liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a government's policy or custom.  *See Monell*, 436 U.S. at 690-91, 694 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").

> [M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage' with the force of law. Municipal liability may be also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval.  Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) (internal quotation marks and citations omitted).

"[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that caused the plaintiff's injury."  *Board County Com'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997) (internal quotation marks and citations omitted).  "For a county to be held responsible, it must have caused the harm through the execution of its own policy or custom by those

whose edicts or acts may fairly be said to represent official policy." *Meade*, 841 F.2d at 1529

(citing *Monell*, 436 U.S. at 694).  "Locating a policy ensures that a municipality is held liable

only for those deprivations resulting from the decisions of its duly constituted legislative body

or of those officials whose acts may fairly be said to be those of the municipality." *Bryan*

*County*, 520 U.S. at 403-04.

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to
> the municipality.  The plaintiff must also demonstrate that, through its deliberate
> conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a
> plaintiff must show that the municipal action was taken with the requisite degree of
> culpability and must demonstrate a direct causal link between the municipal action and
> the deprivation of federal rights.

*Bryan County*, 520 U.S. at 404.

Plaintiffs do not allege any facts to suggest a direct causal link alleged between any

action of the local government entity and a constitutional violation.  *See Hollingsworth v. Hill*,

110 F.3d 733, 742 (10th Cir. 1997).  As Plaintiffs allege no specific conduct apart from that of

the individual employee Defendants, they "can only be alleging *respondeat superior* liability . .

., which the Supreme Court has ruled cannot support § 1983 liability against municipalities."

*Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009).  *See also Sauers v. Salt Lake County*, 1

F.3d 1122, 1129 (10th Cir. 1993) ("Local government liability under § 1983 is not imposed on

a respondeat superior theory.").

Moreover, the policy violation must demonstrate deliberate indifference to the rights of

the Plaintiffs.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  *See also Bryan*

*County*, 520 U.S. at 407 ("a plaintiff who seeks to establish municipal liability . . . must

demonstrate that the municipal action was taken with deliberate indifference as to its known

or obvious consequences.") (internal quotation marks and citation omitted); *Carr v. Castle*,

337 F.3d 1221, 1229 (10th Cir. 2003) ("The deliberate indifference standard may be satisfied

when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."); *Brammer-Hoelter*, 602 F.3d at 1188-89 ("municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused") (internal quotation marks and citations omitted).  Plaintiffs have not alleged any deliberately indifferent conduct.  *See, e.g.,  Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) (general, conclusory allegations, without supporting factual averments, are insufficient to state a claim for deliberate indifference in violation of the Eighth Amendment); *Martin v. Dist. of Columbia*, 720 F. Supp.2d 19, 23 (D.D.C. 2010) (granting city's motion to dismiss § 1983 claim based on inadequate training when allegations did "nothing more than recite the required causal elements of custom or policy liability based on deliberate indifference" and plaintiff's "conclusory statements" were "unsupported by additional factual allegations"); *Jones v. Natesha*, 151 F. Supp. 2d 938, 944–45 (N.D. Ill. 2001) ("It is not enough for a plaintiff to aver a single, conclusory allegation that the defendants' conduct was deliberately indifferent to the plaintiff's constitutional rights.") (internal quotation marks and citation omitted).

Finally, Plaintiffs base their claim against "The Weld County Commissioners" on a single incident, not a pattern of violations of citizens' constitutional rights based on any custom or policy.  *See Bryan County*, 520 U.S. at 408.  "Where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued."  *Moss*, 559 F.3d at 1169 (citation

16

omitted).  *See also Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) ("Proof of

a single incident of unconstitutional activity is not sufficient to impose liability under [ Monell ]

unless proof of the incident includes proof that it was caused by an existing, unconstitutional

municipal policy, which policy can be attributed to a municipal policymaker.").  Plaintiffs do not

allege that a  policy or custom was unconstitutional or that they were injured by a particular

illegal course of action taken pursuant to a decision made by a person with authority to make

policy decisions on behalf of the local government entity.  "When a policy is not

unconstitutional in itself, the county cannot be held liable solely on a showing of a single

incident of unconstitutional activity."  *Meade*, 841 F.2d at 1529 (citation omitted).  In sum,

Plaintiffs' allegations are insufficient to state a claim against "The Weld County

Commissioners" under § 1983.


H.      Personal Participation

        To the extent that Plaintiffs are suing Defendants in their individual capacities,

personal participation in the constitutional violation is an essential allegation in a civil rights

action brought under § 1983.  *See Stidham v. Peace Officer Standards and Training*, 265

F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's

conduct and any constitutional violation "must be alleged in the complaint as well as proven

at trial");  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("personal participation is

an essential element in a § 1983 claim") (internal quotation marks and citation omitted);

*Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an

essential allegation in a § 1983 claim.").  Plaintiffs do not identify any of "The Weld County

Commissioners" by name and state no facts from which it may be inferred that "The Weld

17

County Commissioners" personally participated in any of the alleged violations.  The Amended Complaint contains no specific factual allegations that Defendant Cook personally participated in any constitutional deprivation.  The allegations do not adequately identify what actions Defendant Cook took that give rise to any constitutional violation.  For this reason also, Plaintiffs fail to state a claim upon which relief can be granted against Defendants Cook or "The Weld County Commissioners" in their individual capacities.

I.       Qualified Immunity

        Defendants in their individual capacities raise the defense of qualified immunity to Plaintiffs' claims.  Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).  "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct."  *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (internal quotation marks and citation omitted). "[C]ourts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).

        As the court has concluded in this Recommendation that Plaintiffs fail to state a claim upon which relief can be granted for any constitutional violation, the court need not reach the "clearly established" prong of qualified immunity to conclude that dismissal is correctly

18

granted in favor of the individual Defendants.  *See Wilder*, 490 F.3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).  Where no constitutional  violation is stated, "the inquiry ends and the officer is entitled to qualified immunity."  *Wilder*, 490 F.3d at 813.

J.      Supplemental Jurisdiction

Title 28 U.S.C. § 1367(a) grants supplemental or pendent jurisdiction to federal district courts over a plaintiff's state law claims which arise out of the same transaction or occurrence as the federal claims. To the extent that Plaintiffs bring state law claims other than violations of criminal statutes, a district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  *See also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").  As the court recommends dismissal of Plaintiffs' § 1983 claims, the only claims over which this court could have had original jurisdiction, Plaintiffs' supplemental state law claims of "willful, wanton and outrageous conduct" (*see* Doc. # 14 at 4 of 6, ¶ 20) may properly be dismissed.

Accordingly, IT IS RECOMMENDED that:

1.      The "Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 14) Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1)" filed by Defendants Barker, Arries, Salzman, Schwartz,

19

Cook, and "the Weld County Commissioners" on December 30, 2011 (Doc. # 16) be GRANTED.

2.      All claims against Defendants Barker and Arries pursuant to § 1983 be dismissed with prejudice based on prosecutorial immunity.

3.      All claims based on state or federal criminal laws be dismissed with prejudice, as no civil cause of action can be stated under any set of facts.

4.      All claims against Defendants Barker, Arries, Salzman, Schwartz, Cook, and "the Weld County Commissioners" based on state civil law of trespass, negligence, or conspiracy be dismissed without prejudice for lack of subject matter jurisdiction, as barred by the Colorado Governmental Immunity Act.[3]

5.      All other claims against Defendants Barker, Arries, Salzman, Schwartz, Cook, and "the Weld County Commissioners" be dismissed without prejudice.

6.      All claims against Defendant Maegher be dismissed without prejudice for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

7.      No claims or Defendants remaining, this civil action be dismissed in its entirety.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of

---

[3]      "Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect."  *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010).

20

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling;  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 23rd day of July, 2012.

BY THE COURT:

                                    s/Craig B. Shaffer
                                    United States Magistrate Judge

22