IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02192-REB-CBS

TRENTON H. PARKER,
    Plaintiffs,
v.

BETHANY SALZMAN, individually and in her official capacity, and
GARY SCHWARTZ, individually and in his official capacity,
    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on "Defendants Salzman and Schwartz'[s] Motion for Summary Judgment on Plaintiff's First Amended Complaint (ECF No. 14)." Pursuant to the Order of Reference dated August 24, 2011 (Doc. # 2) and the memorandum dated December 13, 2013 (Doc. # 55), the Motion was referred to the Magistrate Judge. The court has reviewed the Motion, ". . . Plaintiff's Answer to Defendants' Motion[ ] for Summary Judgment . . ." ("Response") (filed February 3, 2014) (Doc. # 60), Defendants' Reply (filed February 17, 2014) (Doc. # 63), the entire case file, the exhibits, affidavit, and declarations, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Proceeding *pro se*, Plaintiffs Trenton Parker and Marjorie Kessling filed their original Complaint on August 22, 2011. (*See* Doc. # 1). They filed their "Amended Civil Rights Complaint for Violations of Plaintiffs' Fourth and Fourteenth Amendment Rights" on December 9, 2011. (*See* Doc. # 14). Plaintiffs brought their claims pursuant to 42 U.S.C. § 1983 and

1

supplemental jurisdiction. (*See* Doc. # 14 at 2 of 6). Plaintiffs sought damages and "declaratory and other injunctive relief." (*See* Doc. # 14 at 2, 5 of 6). On August 30, 2012, District Judge Blackburn dismissed all claims and Defendants from this case, except the Fourth Amendment claim against Defendants Salzman and Schwartz and the outrageous conduct claim against Defendant Salzman. (*See* "Order Concerning Recommendation of the United States Magistrate Judge" (Doc. # 26) at 6 of 7). On September 18, 2013, District Judge Blackburn dismissed Ms. Kessling as a plaintiff in this case. (*See* "Order Adopting Recommendation of United States Magistrate Judge" (Doc. # 48)).[1] Remaining before the court are Mr. Parker's Fourth Amendment claim against Defendants Salzman and Schwartz and Mr. Parker's state law claim for outrageous conduct against Defendant Salzman. Mr. Parker sues Defendants Salzman and Schwartz in their individual and official capacities as, respectively, an employee of the Weld County Building and Zoning Department and a supervisor with the Weld County Animal Control unit. (*See* Doc. # 14 at 1 of 6).

II.     Standard of Review

Defendants move pursuant to Fed. R. Civ. P. 56 for summary judgment on the two remaining claims on the basis that they are entitled to qualified immunity in their individual capacities. The affirmative defense of qualified immunity shields public officials from individual liability in actions brought for money damages under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

---

[1] Ms. Kessling testified that she did not sign the original or Amended Complaint and did not file this lawsuit. (See Deposition of Marjorie A. Kessling on July 13, 2012 (Doc. # 60-1 at 12-19 of 47)).

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 685 F.3d 903, 909 (10th Cir. 2012) (internal quotation marks and citations omitted). "When the defense of qualified immunity is raised in a summary judgment motion, we apply special rules to determine whether the motion was properly granted or denied." *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) (internal quotation marks and citation omitted). *See also Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009) (court's review of summary judgment "in the qualified immunity context differs from that applicable to review of other summary judgment decisions."). "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff," who must meet a two-part test before the defendant will bear the traditional burden of a movant for summary judgment under Fed. R. Civ. P. 56(c). *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotation marks and citation omitted). "Specifically, [t]he plaintiff initially bears a heavy two-part burden [and] must show (1) that the defendant's actions violated a constitutional . . . right, and (2) that the right allegedly violated [was] clearly established at the time of the conduct at issue. Unless the plaintiff carries its twofold burden, the defendant prevails." *Reynolds*, 370 F.3d at 1030 (internal quotation marks and citations omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment – showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted). *See also Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) ("Qualified immunity is applicable unless" the plaintiff can satisfy

both prongs of the inquiry) (internal quotation marks and citation omitted). The court has "discretion to address the two qualified immunity prongs in whatever order is appropriate under the circumstances." *Toevs*, 685 F.3d at 910. *See also Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) ("courts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand") (internal quotation marks and citation omitted).

Because Mr. Parker appears *pro se*, the court reviews his "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall v. Bellmon*, 935 F.2d 1106, 1110 n. 3 (10th Cir. 1991) (citations omitted). However, "the generous construction" that is afforded pro se pleadings has limits, and the court "must avoid becoming the plaintiff's advocate." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1024 (10th Cir. 2012) (citation omitted). Although the court does not "hold the pro se plaintiff to the standard of a trained lawyer," it nonetheless relies on "the plaintiff's statement of his own cause of action." *Id.* (internal quotation marks and citations omitted). *See also Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's advocate); *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

The court must "view the facts in the light most favorable to the plaintiff." *Toevs*, 646 F.3d at 755. *See also Tolan v. Cotton*, No. 13-551, 2014 WL 1757856, at * 7 (May 5, 20140 ("at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party"). Nevertheless, "a plaintiff's version of the facts must find support in the record." *Thomson*, 584 F.3d at 1312.

III.   Analysis

A.   Fourth Amendment Claim

Section 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970). Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).

Mr. Parker's Fourth Amendment claim is based upon Defendants' entry on September 29, 2009 onto the real property known as Lot B of RE-4471 or part of the NW4 of Section 24, T1N, R66W of the 6th P.M., Weld County, Colorado. Mr. Parker was named as a Respondent in *Board of County Commissioners of the County of Weld, State of Colorado v. Land Home Development and Trenton Parker*, Case Number 07CV189 in the District Court for the County of Weld, State of Colorado. (*See* Verified Complaint for Preliminary and Permanent Injunction, Exhibit A to Motion (Doc. # 54-1)). The court in the Weld County case determined that real property controlled by Mr. Parker was in violation of Weld County municipal ordinances based on the maintenance of a non-commercial junkyard. (*See* Order Granting Preliminary and

Permanent Injunction, Exhibit B to Motion (Doc. # 54-2 at ¶¶ 8, 12)).  On December 31, 2007, the court entered an order enjoining Mr. Parker from maintaining, storing or occupying any mobile homes and/or manufactured structures on the property.  (See Doc. # 54-2 at 4 of 4).  On July 9, 2009, the Weld County District Court entered an Order for Contempt against Mr. Parker for failing to comply with the Order Granting Preliminary and Permanent Injunction and ordered Mr. Parker to spend ninety (90) days in jail.  (*See* Order for Contempt, Exhibit C to Motion (Doc. # 54-3);  Order for Commitment to Jail, Exhibit D to Motion (Doc. # 54-4)).  Mr. Parker's 90-day term in the Weld County Jail began on September 8, 2009 at 8:00 a.m.  (*See id.*;  deposition testimony of Trenton H. Parker, Exhibit E to Motion (Doc. # 54-5) at 3-4 of 9).  Mr. Parker was released from the Weld County Jail on November 19, 2009.  (*See* Response (Doc. # 60) at ¶ 89).

      1.     Liability of Defendants in their Individual Capacities

The real property that is the subject of the Weld County case is the same property that Mr. Parker contends the Defendants searched in violation of his Fourth Amendment Rights. Mr. Parker contends that Defendants "came in on the property and proceeded to take pictures, go into the units and take pictures."  (*See* Doc. # 14 at ¶ 16;  Doc. # 54-5 at 8 of 9;  deposition of Trenton H. Parker (Doc. # 60-2) at 7 of 48).  In 2009, Rio Grande Canyon Properties, Inc. had an ownership interest in the subject property.  (*See* Doc. # 54-5 at 5-6 of 9;  Doc. # 60-2 at 4 of 48).  On September 29, 2009, Ms. Kessling was the Registered Agent, a stockholder, the corporate secretary, and co-treasurer of Rio Grande Canyon Properties.  (*See* Doc. # 54-5 at 6-7 of 9;  Colorado Secretary of State, Application for Reinstatement for Rio Grande Canyon Properties, Inc. and 2002 Colorado Secretary of State Periodic Report, Exhibit I to Motion

(Doc. # 54-9); Deposition of Marjorie A. Kessling on July 13, 2012 (Doc. # 60 at 45 of 47; Doc. # 60-1 at 1, 25, 32 of 47)). On September 29, 2009, Defendants Salzman and Schwartz entered the property at the request of Ms. Kessling. (*See* Declaration of Bethany Pascoe f/k/a Salzman, Exhibit F to Motion (Doc. # 54-6); Declaration of Gary Schwartz, Exhibit G to Motion (Doc. # 54-7); Declaration of Nicholas Meagher, Exhibit H to Motion (Doc. # 54-8); Doc. # 14 at 3 of 6, ¶12). Ms. Kessling invited Defendants on the property to assist her in determining how she could bring the property into compliance with the Weld County zoning ordinances. (*See* Docs. # 54-6; # 54-7, # 54-8).

Ms. Kessling provided Defendant Salzman with contact information for Mr. Meagher, a friend of hers whom she authorized to allow "individuals associated with Weld County zoning enforcement and animal control . . . onto the property in order to facilitate the clean-up." (*See* Doc. # 54-6; Doc. # 54-7, # 56-8). Consistent with Ms. Kessling's representations, Mr. Meagher met Defendants Salzman and Schwartz at the property on September 29, 2009 and accompanied them around the ranch property. (*See* Doc. # 54-6; Doc. # 54-7, # 56-8). Ms. Kessling, Mr. Meagher, and Defendants Salzman and Schwartz all understood that Ms. Kessling and Mr. Meagher were authorized to allow Defendants on the property. (*See* Doc. # 54-6 at ¶¶ 12-13; Doc. # 54-7 at ¶¶ 7-8; Doc. # 54-8 at ¶¶ 4, 6; Doc. # 54-9 at ¶¶ 4-6). Mr. Parker was not present at the property on September 29, 2009, as he was incarcerated in the Weld County Jail. (*See* Doc. # 54-4; Doc. # 54-5 at 3-4 of 9). It is undisputed that neither Defendant Salzman nor Defendant Schwartz removed any of Mr. Parker's property on September 29, 2009. (*See* Doc. # 54-5 at 8-9 of 9; Doc. # 60-2 at 6 of 48 (same)).

Claims involving searches and seizures are governed by the Fourth Amendment to the U.S. Constitution, which provides that "[t]he right of the people to be secure in their persons,

houses, paper, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.[2] Mr. Parker's claim is properly analyzed under the reasonableness standard of the Fourth Amendment.

Subject to limited exceptions, the Fourth Amendment prohibits warrantless searches. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). The Fourth Amendment is not violated when an individual voluntarily consents to a search. *United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir.1990). Voluntary consent by a third party with actual or apparent authority is a well-established exception to the warrant requirement. *United States v. Andrus*, 483 F.3d 711, 716 (10th Cir.) (further quotation omitted), *amended by*, 499 F.3d 1162 (2007). In the absence of a search warrant, a lawful search of the premises may be conducted with voluntary consent from the individual whose property is searched or a third party with actual authority or apparent authority to consent to the search. *United States v. Cos*, 498 F.3d 1115, 1124 (10th Cir.2007).

"A third party has actual authority to consent to a search if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes." *Id.* (quotation omitted). Apparent authority may be found if "the facts available to the officer" at the time of the search would lead a person "of reasonable caution" to believe "that the consenting party had authority over the premises." *Rodriguez*, 497 U.S. at 188 (internal quotation marks and citation omitted). *See also Andrus*, 483 F.3d at 716 ("[A] third party has apparent authority to consent to a search when an officer reasonably, even if erroneously, believes the third party

---

[2] The protections of the Fourth Amendment are made applicable to the states through the Fourteenth Amendment. U.S. Const. amend. XIV; *Michigan v. Summers,* 452 U.S. 692, 694 n. 2 (1981); *Pierce v. Ohio Dept. of Rehabilitation and Corrections,* 284 F. Supp. 2d 811, 828 n. 16 (N.D. Ohio 2003)*.*

8

possesses authority to consent."); *United States v. Hunter*, 663 F.3d 1136, 1144 (10th Cir. 2011) ("A person can have apparent authority if the facts available to the officers at the time they commenced the search would lead a reasonable officer to believe the third party had authority to consent to the search.") (internal quotation marks and citation omitted).

The evidence indicates that Ms. Kessling had a longstanding relationship with Mr. Parker in business and personal matters. She had ownership interests with Mr. Parker in businesses and property, of which Defendants were aware. (*See, e.g.*, Doc. # 60-1 at 23 of 47, Affidavit of Marjorie Kessling, Exhibit J to Motion (Doc. # 54-10) at ¶¶ 6, 7). Mr. Parker alleges that Ms. Kessling "is one of the owners of a 45 acre ranch property which is the subject of this legal action. . . ." (*See* Doc. # 14 at ¶ 12). Mr. Parker alleges that he "was the caretaker of said ranch and had permission [to] work on the ranch and to have and store his personal property thereon." (*See id.*). In an Affidavit dated August 23, 2009 and filed by Mr. Parker in Weld County Case No. 07-CV-189, Ms. Kessling stated that "I am currently an investor in the Weld County horse property . . . I invested in 'Land Home' by trading some of Intermountain's equipment and material for stock in 'Land Home' and later on, in Rio Grande [Canyon Properties, Inc.]," and "[a]ll of the portable structures located on the Weld County horse ranch property belong to either me, or other investors . . . ." (*See* Doc. # 54-10 at ¶¶ 5, 7). She further stated that *"*Trenton Parker does not own any of the cars, trucks, equipment, trailers, portable structures or horses located at the Weld County ranch property, . . . none of the trailers and equipment on the ranch property belong to Trenton Parker," and "Mr. Parker has never owned any of the portable buildings at the ranch ." (*See* Doc. # 54-10 at ¶¶ 7, 8, 10)*.*

Mr. Parker argues that information in Ms. Kessling's deposition and affidavit contradicts the evidence that she had an ownership interest in the real or personal property on the ranch.

(*See* Doc. # 54-10 at 3 of 7;  Doc. # 60 at 27 of 47, ¶ 157;  46-47 of 47;  Doc. # 60-1 at 7, 19-22 of 47).  Ms. Kessling's testimony and affidavit contain some conflicting information.  (*See, e.g.,* Doc. # 54-10 at 3-4 of 7;  Doc. # 60 at 46-47 of 47;  Doc. # 60-1 at 7, 19-22 of 47 (regarding her ownership interests in Land Home Development Company, Inc., Rio Grande Canyon Properties, Inc., the Weld County horse ranch property, and portable structures, vehicles, equipment, and trailers)).  Nevertheless, Mr. Parker's own testimony supports that on September 29, 2009, Ms. Kessling was the Registered Agent, a stockholder, the corporate secretary, and co-treasurer of Rio Grande Canyon Properties.  (*See* Doc. # 54-5 at 6-7 of 9;  *see also* Doc. # 54-9;  Doc. # 60 at 45 of 47;  Doc. # 60-1 at 1, 25, of 47).  It is uncontested that Ms. Kessling was the Registered Agent for Rio Grande Canyon Properties, Inc., among other entities, that some of the horses on the property belonged to her, and that she exercised her authority to "oversee the care of the mobile homes," enter the property at will, attempt to clean up the property, borrow an item of Mr. Parker's property, remove items of his personal property, and stay on the property for a few days to a week.  (*See* Doc. # 60 at 45 of 47;  Doc. # 60-1 at 3-5, 25-26, 29, 31-32 of 47;  Doc. # 60-2 at 4 of 48).  "[A] third party's entering the premises . . . at will, without the consent of the subject of the search," demonstrates "mutual use of property by virtue of joint access."  *United States v. Sanchez*, 608 F.3d 685, 689 (10th Cir. 2010) (internal quotation marks and citation omitted).

The Supreme Court has "not held that the Fourth Amendment requires factual accuracy."  *Rodriguez*, 497 U.S. at 185.  "[I]n order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government, . . . [such as] the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not

that they always be correct, but that they always be reasonable." *Id.* "As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Id.* at 188 (internal quotation marks and citation omitted).  *See also Hunter v. Bryant*, 502 U.S. 224, 228–29 (1991) (agents "would be entitled to qualified immunity because their decision was reasonable, even if mistaken"); *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1516 (10th Cir. 1995) ("Defendant police officers maintain their shield of qualified immunity from liability for warrantless searches as long as a reasonable officer could have believed that the warrantless search was lawful.").  Taken in the light most favorable to Mr. Parker, the record before the court indicates that Defendants are entitled to qualified immunity in connection with their entry on the property because they could have reasonably concluded that Ms. Kessling had actual or apparent authority to consent and voluntarily consented to the entry.  Mr. Parker cannot meet his "heavy two-part burden" of demonstrating that Defendants' actions violated a constitutional right.  *Reynolds*, 370 F.3d at 1030 (internal quotation marks and citations omitted).  Where no constitutional violation is stated, "the inquiry ends and the officer is entitled to qualified immunity."  *Wilder*, 490 F.3d at 813 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

    2.    Liability of Defendants in their Official Capacities

To the extent that Mr. Parker is suing Defendants in their official capacities, he is actually attempting to impose liability on their employers.  *See Meade v. Grubbs*, 841 F.2d

1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents"), *abrogated on other grounds by Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 (10th Cir. 2013). As the court has determined that Mr. Parker fails to establish an underlying constitutional violation by Defendants in their individual capacities, he fails to demonstrate a claim for relief against them in their official capacities. *See, e.g., Estate of Larsen ex. Rel Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008) ("without the predicate constitutional harm inflicted by an officer, no municipal liability exists") (citation omitted); *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1156 (10th Cir. 2001) (absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability imposed on the city on account of its policies, customs, and/or supervision with regard to the individual defendants); *Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 132 (2d Cir. 1997) ("a claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised") (citation omitted).

B.  Outrageous Conduct Claim

Mr. Parker's state law civil claim for outrageous conduct against Defendant Salzman is based on the same facts that form the basis of his Fourth Amendment claim. (*See* Doc. # 14 at 4 of 6, ¶ 20). "Viewing the complaint as a whole and reading its allegation liberally," Judge Blackburn concluded that Mr. Parker "stated a viable outrageous conduct claim against Bethany Salzman." (*See* Doc. # 48). Defendant Salzman now moves for summary judgment on Mr. Parker's outrageous conduct claim.

> Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. A dispute is genuine if the issue could be resolved in favor of either party. A fact is material if it might reasonably affect the outcome of the case.
> A movant who bears the burden of proof at trial must submit evidence to establish every essential element of its claim. Once the motion has been supported properly, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. All the evidence must be viewed in the light most favorable to the party opposing the motion.

*Perkins v. Federal Fruit & Produce Co., Inc.*, No. 11-cv-00542-REB-KLM, 2012 WL 1247192, at * 1 (D. Colo. Apr. 12. 2012) (internal quotation marks and citations omitted).

"The elements of a claim for outrageous conduct are (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) defendant's conduct caused plaintiff to suffer severe emotional distress." *Perkins*, 2012 WL 1247192, at * 7 (citation omitted). *See also LaBrecque v. L3 Communication Titan Corp.*, No. 05-cv-00642-REB-MJW, 2007 WL 1455850, at * 4 (D. Colo. May 16, 2007) (same), *order supplemented by* 2007 WL 1520110 (D. Colo. May 21, 2007). "The level of outrageousness necessary to meet the first element is extremely high." *LaBrecque*, 2007 WL 1455850, at * 4 (internal quotation marks and citation omitted). "Outrageous conduct" is defined as conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo.1994) (internal quotation marks and citation omitted). The tort of outrageous conduct "contemplates an extreme level of independently ascertainable misconduct from which the ineluctable conclusion is the calculated or reckless infliction of severe mental suffering." *Visor v. Sprint/United Management Co.*, 965 F.Supp. 31, 33 (D.Colo.1997) (internal quotation marks and citation omitted).

"The trial court must address the threshold issue of whether the conduct in question is sufficiently outrageous as a matter of law to support a claim of extreme and outrageous conduct." *LaBrecque*, 2007 WL 1455850, at * 5 (citation omitted).  "A triable issue of fact would exist if there were evidence that the defendants engaged in outrageous conduct with the specific intent of causing severe emotional distress or that the defendants acted recklessly with the knowledge that there was a substantial probability that their conduct would cause severe emotional distress." *Culpepper*, 877 P.2d at 882 (citation omitted).  "Where it is clear to the court that the conduct complained of cannot be considered as rising to the egregious standard required, a claim for outrageous conduct is properly dismissed."  *Shackelford v. Courtesy Ford, Inc.*, 96 F.Supp.2d 1140, 1146 (D.Colo. 2000).

Viewing the evidence in the record in the light most favorable to Mr. Parker, the court concludes that Defendant Salzman is entitled to summary judgment on the outrageous conduct claim.  First, the single warrantless entry that Mr. Parker alleges does not meet the narrow scope of actionable conduct for an outrageous conduct claim.  *See Watson v. City of Kansas City, Kan.,* 185 F. Supp. 2d 1191, 1207 (D. Kan. 2001) (court "not convinced" that plaintiff's allegations that defendants "unlawfully and maliciously entered their properties both with and without a warrant" and "obtained the warrants used to access their properties using false and misleading information" were "atrocious and utterly intolerable in a civilized society"); *Green v. City of Wichita, Kan.*, 47 F.Supp.2d 1273, 1282 (D. Kan. 1999) (finding plaintiffs' complaints of "being given numerous housing code citations, having their rental property placarded, having their property entered into by the defendants without authorization, and being forced to appear in court numerous times on housing code violations" could not be viewed as atrocious and utterly intolerable in a civilized society") (internal quotation marks and

citation omitted). Mr. Parker has not cited the court to any supporting legal authority that his allegations meet the threshold test for a claim of outrageous conduct. Mr. Parker merely conclusorily alleges that Defendant Salzman's conduct was outrageous. (See Doc. # 14 at ¶ 20). He has alleged no facts that illustrate extreme and outrageous conduct, nor has he shown any evidence of severe emotional distress. Mr. Parker fails to demonstrate how his "general allegations establish the essential elements of a claim for outrageous conduct." *Houston v. Mile High Adventist Academy*, 872 F.Supp. 829, 835 (D.Colo. 1994). As a matter of law, the facts in this case do not rise to the level sufficient to support a claim of outrageous conduct.

1.   Colorado Governmental Immunity Act

Mr. Parker's state law claim for outrageous conduct is governed by the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. §§ 24-10-101 *et seq.*, Colo. Rev. Stat. § 24-10-106. The CGIA establishes sovereign immunity for all public employees for all actions that lie in tort or could lie in tort, except in certain limited circumstances. *See* Colo. Rev. Stat. § 24-10-105, § 24-10-106(1) ("A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section"). In parts pertinent to this case, the CGIA provides that Defendants are immune from liability unless liability has been waived and their conduct was willful and wanton. Colo. Rev. Stat. § 24-10-118(2)(a). First, the CGIA does not provide a waiver of immunity for Mr. Parker's outrageous conduct claim. *See* Colo. Rev. Stat. §§ 24-10-106(1)(a)–(h). Second, "to be willful and wanton, public employees must be consciously aware that their acts or omissions create

danger or risk to the safety of others, and they then act, or fail to act, without regard to the danger or risk." *Gray v. University of Colorado Hosp. Authority*, 284 P.3d 191, 198 (Colo. App. 2012). Whether a plaintiff has pled sufficient facts to state a claim alleging that a public employee's acts or omissions were willful and wanton is a threshold determination to be made by the court. *Id.* (citation omitted). *See also Barham v. Scalia*, 928 P.2d 1381, 1385 (Colo.App.1996) ("Whether a plaintiff has pleaded sufficient facts to state a claim based upon willful and wanton conduct is to be determined by the court.").

The CGIA clearly requires a party to include the "specific factual basis" for any allegation that the conduct was "willful and wanton." Colo. Rev. Stat. § 24-10-110(5)(a). "Failure to plead the factual basis of an allegation that an act or omission of a public employee was willful and wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted." Colo. Rev. Stat. § 24–10–110(5)(b). *See also Robinson v. City and County of Denver*, 39 F.Supp.2d 1257, 1264 (D. Colo. 1999) ("The statute 'requires that a plaintiff set forth in his complaint specific facts which support his claim that public employees acted willfully and wantonly'; conclusory allegations are insufficient."). While Mr. Parker conclusorily alleges that Defendants acted willfully and wantonly, he does not provide any factual basis that Defendant Salzman's acts or omissions were willful and wanton. As there is no evidence that her actions were willful and wanton, Defendant Salzman has immunity pursuant to Colo. Rev. Stat, § 24–10–118(2) and summary judgment is proper on Mr. Parker's outrageous conduct claim. *See Carothers v. Archuleta County Sheriff*, 159 P.3d 647, 652 (Colo. App. 2006) (if no waiver of immunity exists under the CGIA for the alleged tortuous conduct of a public employee, the employee is immune from suit unless the plaintiff sufficiently pleads willful and wanton conduct by the employee).

16

2. Supplemental Jurisdiction

Title 28 U.S.C. § 1367(a) grants supplemental or pendent jurisdiction to federal district courts over a plaintiff's state law claims which arise out of the same transaction or occurrence as the federal claims. A district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). *See also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). As the court recommends that summary judgment be granted in favor of Defendants on Mr. Parker's § 1983 claim -- the only claims over which this court has original jurisdiction – the court may decline to exercise jurisdiction over the state law claim for outrageous conduct.

Accordingly, IT IS RECOMMENDED that:

1. "Defendants Salzman and Schwartz'[s] Motion for Summary Judgment on Plaintiff's First Amended Complaint (ECF No. 14)" (filed December 13, 2013 (Doc. # 54) be GRANTED.

2. Summary judgment be entered against Mr. Parker and in favor of Defendants Salzman and Schwartz, the two Defendants who remain in the case, on the two claims that remain in the case.

3. Mr. Parker's request "for Summary Judgment against the Defendants," made in his Response (*see* Doc. # 60 at 28 of 47) be DENIED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 28th day of May, 2014.

            BY THE COURT:

            <u> s/Craig B. Shaffer  </u>
            United States Magistrate Judge